Mary D. IRBY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16982.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 13, 1962.

Decided Jan. 4, 1963.

Petition for Rehearing En Banc Denied
En Banc Feb. 13, 1963.

Mr. Herbert J. Muriel, III, Washington, D. C., for appellant.

Mr. Barry Sidman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BASTIAN, BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge.

The central issue on appeal is whether the affidavits filed in support of the application for a search warrant disclose reasonable grounds, or probable cause, for belief that criminal acts were being committed on the premises in question.

After describing the place to be searched and giving the name of the occupant "James Campy Irby, alias Cueball," identified later in the affidavit, as in Police Records, as "a known and convicted narcotic peddler," the affidavit recited:

"About 9:40 A.M., June 16, 1961, Dets. Virgil S. Hood and Joseph W. Somerville, Narcotic Squad, MPDC, contacted a confidential Special Employee in the 1500 block of 13th St., N.W. Det. Hood searched the Special Employee and found him free of any money and narcotics and gave him $10.00 MPDC Advance Funds to purchase 6 capsules of heroin from inside of premises 1742 Corcoran St., N.W., 1st floor front apartment occupied by James C. Irby and a white female called Sweetie. The Special Employee was then driven to 17th and Corcoran St., N.W. in a private auto by Dets. Hood and Somerville, and was observed to enter premises 1742 Corcoran St., N.W. and remain inside about 10 minutes and come out and return to the auto and informed Dets. Hood and Somerville that James Irby alias Cueball was out capping up some heroin and would be back in an hour. While observing the premises Dets. Hood and Somerville observed 7 known addicts standing in front of premises 1742 Corcoran St., N.W."

This was plainly sufficient to require pursuit of the inquiry. The affidavit then continues:

"About 10:35 A.M. Dets. Hood and Somerville observed the Special Employee contact a subject known as 'Little Eddie' and handed him the money that had been given to him by Det. Hood. Little Eddie was also observed to take money from several of the other addicts that were standing on the corner of 17th and Corcoran St., and walk to 1742 Corcoran St., N.W., first floor front apartment, remain a short time and return to the corner and hand a small white package to the Special Employee at which time the Special Employee walked away north on 17th St., N.W., and east on T St., N.W., at all times within the observations of Dets. Hood and Somerville. The confidential Special Employee turned over to Det. Hood in Somerville's presence, a white paper napkin containing 6 gelatin capsules of white powder and one dollar change. Det. Hood searched the Special Employee and found him free of any money or narcotics. * * *"

The affidavit then stated the belief that based on their special knowledge of illicit narcotics traffic the officers believed that violations of drug laws were being conducted, concluding:

"About 11:30 A.M. Wednesday, July 26, 1961, the Special Employee stated that he went to 1742 Corcoran St., N.W., 1st floor front apartment. Contacted a white female known to him as Sweetie. She asked the Special Employee how many he wanted and said do you know the price has gone up to $2.00 per cap? The Special Employee then said 'I want five caps'. The female then handed the Special Employee 5 gelatin capsules each containing a white powder and he handed her $10.00 and left the premises."

On this information the United States Commissioner issued a search warrant which when executed disclosed substantial quantities of illicit narcotics on the premises. The convicted narcotics peddler James C. (Cueball) Irby was not at home at the time; his wife is appellant.

The United States Commissioner had before him not hearsay but direct information of trained and experienced officers who described what they saw by way of the presence of known narcotics users and peddlers gathered just outside the residence of a well known and previously convicted drug trafficker. Secondly he had statements of information given to police by a person who advised police that he had made purchases of drugs on the premises. They were advised on the first surveillance that the convicted drug peddler "Cueball" Irby was not at home but away "capping heroin."

The question is whether probable cause existed for a belief that "Cueball" Irby, or others in his home, were violating the law. An appellate court must approach the issue mindful of, although not bound to accept in all cases, the presumptions of regularity which attend the action of the United States Commissioner. Moreover, the Commissioner, as any magistrate experienced in these matters, is entitled to draw inferences from acts which to the uninitiated and unskilled would be innocent acts. Judge Weick for the 6th Circuit, while noting the inartful draftsmanship of a challenged warrant affidavit, held that the Commissioner's "determination [of probable cause] is conclusive, unless his judgment is arbitrarily exercised." United States v. Spears, 287 F.2d 7, 9 (6th Cir. 1961). The burden is on the movant to show that the issuance of the warrant was an abuse of discretion. See Evans v. United States, 242 F.2d 534, 536 (6th Cir. 1957). Similarly the Second Circuit, Judge Waterman writing, pointed out that the application for a search warrant need not reveal all the information known to police:

> "In close cases such as the present one the very fact that the Commis-

sioner found probable cause is itself a substantial factor tending to uphold the validity of the warrant. * * * *" United States v. Ramirez, 279 F.2d 712, 716 (2d Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960).

The reasonable ground or probable cause which will support a warrant thus falls far short of legal evidence. The warrant hearing is ex parte and is in no way to be equated to a criminal trial. It requires only that showing which would lead a cautious and prudent judicial officer to act; it can and usually is based on hearsay. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Our own holding in Ward v. United States, 108 U.S.App.D.C. 282, 283, 281 F.2d 917, 918 (1960), cert. denied, 365 U.S. 837, 81 S.Ct. 751, 5 L.Ed.2d 746 (1961), summarized the standards:

> "The issue at the warrant stage is not whether the information or evidence would sustain a *conviction* or even a charge, but whether [Officer] Wilson and his colleagues were 'fully warranted * * * as [men] of reasonable caution in believing that an offense against the narcotics laws had been and was being committed.'"

In Draper v. United States, 358 U.S. 307, 323, 79 S.Ct. 329, 338, 3 L.Ed.2d 327 (1959), the Supreme Court expressly validated the use of hearsay as support for a search warrant and the *dissent* of Mr. Justice Douglas agreed that hearsay could sustain a warrant:

> "The Court is quite correct in saying that proof of 'reasonable grounds' for believing a crime was being committed need not be proof admissible at the trial. It could be inferences from suspicious acts, e. g., consort with known peddlers, the surreptitious passing of a package, an intercepted message suggesting criminal activities, or any number of such events coming to the knowledge of the officer."

See Brandon v. United States, 106 U.S. App.D.C. 118, 270 F.2d 311 (1959) (*en banc.*)

As we see it the officer was compelled to seek a warrant once he had this information. That he could have secured or might well have recited more information or otherwise prepared a more artful application is not the issue; policemen cannot be expected to draft documents as skillfully as lawyers or judges.*

The judgment of the District Court is

Affirmed.

---

* The delay of 8 days between the last recited observation of trafficking and the issuance of the warrant must be considered in light of all the surrounding factors. One explanation, were it our province to speculate, might be that police were waiting to catch the "larger fish" in the person of the notorious "Cueball" Irby rather than only his spouse. But narcotics activity observed 6 weeks earlier and found continuing 8 days before the warrant, could reasonably, and we think should lead a reasonable man to believe a person of "Cueball" Irby's background was still engaged in the same activity. For all we know, the police may have had new information on the day of the warrant which they preferred not to disclose: they do not need to make a case for conviction in order to get the warrant.

1. AFFIDAVIT RELATIVE TO REQUEST FOR UNITED STATES COMMISSIONER'S SEARCH WARRANT FOR PREMISES DESCRIBED BELOW FOR VIOLATION OF THE HARRISON NARCOTIC DRUG ACT, AND ARREST WARRANTS FOR THE FOLLOWING DESCRIBED PERSONS.

Search Warrant: 1742 Corcoran Street, N. W., 1st floor front and all of premises occupied by James Campy Irby, alias Cueball.

Arrest Warrant: Eddie Thorpe, alias Little Eddie

AFFIDAVIT:

About 9:40 A.M. June 16, 1961, Detectives Virgil J. Hood and Joseph W. Somerville, Narcotic Squad, MPDC, contacted a confidential Special Employee in the 1500 block of 13th Street, N. W. Detective Hood searched the Special Employee and found him free of any money and narcotics and gave him $10.00 MPDC Advance funds to purchase 6 capsules of

WRIGHT, Circuit Judge (dissenting).

The predicate for this prosecution is evidence obtained from the search of an apartment pursuant to a search warrant based solely on an affidavit signed by two officers of the Metropolitan Police Narcotic Squad. The question presented is whether the affidavit constitutes probable cause for the issuance of the warrant. I think not.

The affidavit and the warrant were dated August 2, 1961, and the warrant was executed August 4, 1961. The affidavit[1] outlines two incidents on which

heroin from inside the premises 1742 Corcoran Street, N. W. 1st Floor front apartment occupied by James C. Irby and a white female called Sweetie. The Special Employee was then driven to 17th and Corcoran Street N.W. in a private auto by Detectives Hood and Somerville, and was observed to enter premises 1742 Corcoran Street, N.W. and remain inside about 10 minutes and come out and return to the auto and informed Detectives Hood and Somerville that James Irby alias Cueball was out capping up some heroin and would be back in an hour. While observing the premises Detective Hood and Somerville observed 7 known addicts standing in front of premises 1742 Corcoran Street, N.W.

About 10:35 A.M. Detectives Hood and Somerville observed the Special Employee contact a subject known as "Little Eddie" and handed him the money that had been given to him by Detective Hood. Little Eddie was also observed to take money from several of the other addicts that were standing on the corner of 17th and Corcoran Street and walk to 1742 Corcoran Street N.W. first floor front apt., remain a short time and return to the corner and hand a small white package to the Special Employee at which time the Special Employee walked away north on 17th Street N.W. and east on Tea Street N.W. at all times within the observations of Detective Hood and Somerville. The Confidential Special Employee turned over to Detective Hood, in Somerville's presence, a white paper napkin containing 6 gelatin capsules of white powder and one dollar change. Detective Hood searched the Special Employee and found him free of any money or narcotics.

Detective Hood brought the capsules to the Narcotic Squad office and made a preliminary field test on a portion of

the Government relies for probable cause. One incident, on June 16, 1961, involved the purchase of six capsules of heroin by an unidentified police informant on the corner of 17th and Corcoran Streets, N. W., the informant having been duly searched and provided beforehand with Government funds to make the purchase. The affidavit alleges that after taking the informant's money, as well as that of several other addicts on the corner, "Little Eddie," a person apparently unknown to the police, walked to 1742 Corcoran Street, N. W., first floor apartment, remained a short time, and returned to the corner and handed a small white package, later disclosed to contain heroin, to the informant. The affidavit further alleges that one James Irby, known to the narcotic office as a narcotic peddler, occupied the premises searched, 1742 Corcoran Street, N. W., first floor apartment.

The second incident is alleged to have occurred July 26, 1961. This allegation is merely the hearsay statement of the informant that he went to the premises described and bought "5 gelatin capsules each containing a white powder" from a white female known as "Sweetie." This second incident admittedly is entirely uncorroborated. Nor is it even alleged that the unidentified informant is reliable or that the "white powder" was contraband of any kind. Whether failure to allege reliability in the informant, on either occasion, was an inadvertence is not clear. It is clear that the informant was not available for the hearing on the motion to suppress or for the trial, and consequently appellant was unable to test the accuracy of the affidavit through examination of the alleged informant.[2] Another circumstance bearing on reliability and accuracy is the fact that no charges of any kind resulted from the alleged purchase on July 26, 1961. Still other questions arise: Why the failure to allege in the affidavit the purchase of drugs, instead of "white powder," on July 26, 1961? And why did the police wait so long, over six weeks after the first incident and eight days after the second, before making their affidavit and obtaining the warrant?[3]

---

the powder from one of the capsules which indicated by positive color reaction the presence of an alkaloid of the opiate group, in Detective Somerville's presence and placed them in a small cream colored envelope which both officers initialed for future identification and Detective Hood placed them in his desk and locked it.

James Campy Irby, alias Cueball is known to the Narcotic Squad as a known and convicted narcotic peddler. From the officers knowledge of the illicit narcotic traffic, it is their belief that there is now concealed in premises 1742 Corcoran Street N.W. that part occupied by James C. Irby, narcotic drugs and paraphernalia in violation of the Harrison Narcotic Drug Act and that the premises is being used as a dope pad and that James Irby is the occupant and/or operator.

About 11:30 A.M. Wednesday July 26, 1961 the Special Employee stated that he went to 1742 Corcoran Street, N. W. 1st floor front apartment. Contacted a white female known to him as Sweetie. She asked the Special Employee how many he wanted and said do you know the price has gone up to $2.00 per cap?

The Special Employee then said "I want five caps". The female then handed the Special Employee 5 gelatin capsules each containing a white powder and he handed her $10.00 and left the premises.

/s/ Virgil J. Hood /s/ Joseph W.
Det. Narcotic Somerville
Squad MPDC Det, Narcotic
Squad, M.P. DC

SUBSCRIBED AND SWORN TO BEFORE ME THIS 2ND DAY OF AUGUST 1961

/s/ Sam Wertleb
SAM WERTLEB
U. S. COMMISSIONER
WASHINGTON, D. C.

2. If appellant could have shown through the informant that the informant did not give the officers the information alleged in the affidavit, the warrant would be invalid. See Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960).

3. For a collection of cases discussing lapse of time as a factor in determining probable cause, see Annotation, 39 A.L.R. 811, 847, as supplemented 74 A.L.R. 1418, 1514, and 162 A.L.R. 1406.

When Government narcotic officers want to buy narcotics inside premises to lay a foundation for a search thereof, they know how to do it. They search an informant to see that he has no drugs or money on his person, they give him Government funds, and they keep him under observation until he enters the house. They then keep the premises under observation until he reappears and returns to them with the money gone but with the drugs purchased. Why this timeworn procedure was not used by the police here is not disclosed. It is not suggested, of course, that probable cause for a narcotic search can be shown only in this way. But it is one way, long accepted, and was available to the police in this instance if their affidavit is to be credited.

Both sides rely heavily on Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). There a hearsay affidavit reciting information from an unnamed informant passed the probable cause test. But there the hearsay information disclosed that two named parties, previously known to the police as drug violators, kept "a ready supply of heroin on hand in the above mentioned apartment * * * under a pillow, on a dresser or on a window ledge in said apartment," and that the informant had purchased drugs there on many occasions, the last time being August 20, 1957, the day the information was reported to affiants. The affidavit, dated August 21, 1957, also recited that the informant had previously given reliable information and that the information he was then giving was corroborated by information obtained from other persons.

Here there is no allegation, even by hearsay, as to where narcotics might be found in the premises to be searched.

Indeed, there is no allegation that narcotics were in the apartment at all. Nor is there any allegation that the hearsay from the informant is confirmed by information received from other sources. And, most important, when the police in Jones obtained their information as to the presence of heroin in the premises, they acted, as reasonable men might expect them to, *without delay*. Here we have one incident involving a street purchase approximately one block from the premises searched six weeeks before the issuance of the warrant, and another incident eight days before. As to neither incident is the unidentified fugitive informant alleged to be reliable, and as to the second incident no test, or other identification, of the "white powder" is alleged, and no prosecution resulted.

The question of probable cause sufficient for the issuance of a search warrant is, of course, directed in the first instance to the commissioner. But where, as here, the commissioner's judgment is predicated solely on an affidavit, a court is not relieved from making its own judgment as to whether "there was substantial basis for him to conclude that narcotics were probably present in the apartment." Jones v. United States, supra, 271, 80 S.Ct. 736.

For me, there is not here the kind of trustworthy showing which should be made before a home is invaded. The protective wall around the home erected by the Fourth Amendment may not be so easily breached. The temptation to relax constitutional safeguards when dealing with sordid dope offenders is great. But, in my judgment, it is a temptation that must be resisted lest the Fourth Amendment become a rubber yardstick in the hands of the police.[4]

4. "When guilt permeates a record, even judges sometimes relax and let the police take shortcuts not sanctioned by constitutional procedures. That practice, in certain periods of our history and in certain courts, has lowered our standards of law administration. The harm in the given case may seem excusable. But the practices generated by the precedent have far-reaching consequences that are harmful and injurious beyond measurement." Mr. Justice Douglas, dissenting, in Abel v. United States, 362 U.S. 217, 241–242, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960).