Lenzel A. FRANKLIN, Appellant,

v.

UNITED STATES, Appellee.

No. 3533.

District of Columbia Court of Appeals.

Argued Sept. 21, 1964.

Decided Nov. 2, 1964.

Leroy Nesbitt, Washington, D. C., for appellant.

Daniel J. McTague, Asst. U. S. Atty., with whom David C. Acheson, U. S. Atty., Frank Q. Nebeker and David W. Miller, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Appellant was convicted of carrying a deadly weapon without a license in violation of 22 D.C.Code § 3204. He contends the weapon, a loaded pistol, was taken from his person pursuant to an arrest without probable cause and that it was error to deny his motion to suppress.

At trial Officer Schubring of the Metropolitan Police Department testified that he personally had received information from a reliable source that over a period of several weeks a man or several men had been robbing prostitutes and their customers after midnight while they were parked in the 2500 block of Ninth Street, Northwest. He stated that the men engaged in the robberies had been described to him as both in their early twenties, one dark-skinned and the other medium dark in color, one about five feet six or seven inches tall and the other about six feet tall. The arresting officer, Driscoll, testified he had received similar information. On the basis of this com-

plaint, the officers had been assigned to give the area in question special attention during the early morning hours.

On December 13, 1963, at approximately 1:40 a. m., while cruising in the area, these officers observed appellant[1] park his automobile just east of the 2500 block of Ninth Street, jump out and run or "half-run" around the corner and down Ninth Street. They pulled along side of appellant, who had slowed to a walk. In response to an inquiry as to why he was in such a hurry, appellant stated he was going home. Questioning elicited that he lived "out in Northeast," in the opposite direction from the way he was going. Later appellant said he had observed a car parked in the block and was going to "check" it; that he had seen a man pick up a woman in the car, and he was going to get the woman after the man had left. Officer Schubring's further investigation revealed that the parked car was occupied by a white man and a known colored prostitute, which facts he communicated to Officer Driscoll, who had walked down to the car with appellant. Acting on the belief that this was the individual they were seeking, Driscoll "padded down" appellant[2] and discovered in his hip pocket a loaded .22 calibre pistol, which was thereafter used as a basis for the present conviction.

The sole question before us is whether there was probable cause for the arrest of appellant under the circumstances above described.

Probable cause cannot be determined by any fixed formula but must be resolved on the facts of each individual case. Pettas v. United States, D.C.App., 203 A.2d 170, 172 (1964); Teresi v. United States, D.C.App., 187 A.2d 492, 493 (1963). In determining whether there was probable cause to arrest appellant, we must look to the evidence upon which the police officers

acted at the time of arrest. Heard v. United States, D.C.App., 197 A.2d 850, 851 (1964). Where a citizen has conducted himself in a peaceful and orderly manner, it is not for police officers to assume guilt and, without a warrant, make an arrest and search. Bolt v. United States, 55 App.D.C. 120, 121, 2 F.2d 922, 923 (1924). However, an officer may arrest without a warrant when he has reasonable grounds in the light of the circumstances of the moment, as viewed through his eyes and considered *in toto*, for the belief that a felony has been committed and that the person before him committed it. Bell v. United States, 102 U.S.App.D.C. 383, 386, 254 F.2d 82, 85 (1958), cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113; Heard v. United States, supra, 197 A.2d at page 851. They must be evaluated by the impression they would make upon the mind of a reasonable, prudent police officer. Are they such as to lead him to believe a crime has been, is being, or is about to be committed? Pettas v. United States, supra, 203 A.2d at page 172. Reasonable probability from the facts and circumstances at the time and place is all that is required—"not certainties and not necessarily eventual truth." Bell v. United States, supra, 102 U.S.App.D.C. at page 387, 254 F.2d at page 86; Dixon v. United States, 111 U.S.App.D.C. 305, 306, 307, 296 F.2d 427, 428, 429 (1961).

In the present case, specially-assigned police officers were on the lookout for the perpetrator of a series of night-time robberies that had taken place in a one-block area. Appellant, who reasonably conformed to the material elements of the description possessed by the arresting officer, was observed in the early hours of the morning in that particular block, acting suspiciously. He gave evasive and irreconcilable answers to normal questions about his presence there. He was admittedly heading for a parked car, which investiga-

---

1. The record discloses that appellant is a Negro male, 24 years of age, about five feet eight and a half inches in height.

2. It is at this point we believe the actual arrest occurred, the "padding down" being an overt act manifesting the accomplished arrest.

tion disclosed was occupied by a recognized prostitute and her customer. All fitted into the known pattern and pointed to the reasonable probability that appellant was the man the officers were assigned to apprehend.

The case is more analogous in fact to the Ellis case than to the Gatlin decision.[3] We think that a reasonable, cautious and prudent police officer under the circumstances here presented to him and upon the information he had received had probable cause to arrest appellant. Where police officers have reason to believe that a person is about to commit armed robbery, the law does not require them, nor is it prudent for them, to wait until the weapon is produced and aimed at the unfortunate victim. To hold otherwise would sacrifice the community's right to adequate police protection.

We hold that there was probable cause under the circumstances of this case for the arrest of appellant and that his motion to suppress was properly denied.

Affirmed.

3. The government relies on Ellis v. United States, 105 U.S.App.D.C. 86, 264 F.2d 372 (1959), cert. denied, 359 U.S. 998, 79 S.Ct. 1129, 3 L.Ed.2d 986. That case also involved assignment of officers to give special attention to a particular area to look out for the perpetrator of a series of specific crimes, housebreakings, according to a common pattern during a particular time of day. The suspect had been described as a "brown-skinned" colored man, 5' 7" or 5' 8" tall, 150 pounds, "very neatly" dressed, wearing a gray or black topcoat and a brown or gray hat. In finding probable cause for Ellis' arrest, the court said:

"Here the basic elements of the various descriptions * * * fairly matched Ellis' appearance. This, coupled with Ellis' presence in the area at that time of day, the entry on the front porch, and his behavior when confronted, justified his apprehension. All fitted into the known pattern and pointed to the reasonable probability that Ellis was the man the officers were seeking." Id. 105 U.S.App.D.C. at page 88, 264 F. 2d at page 374.

Appellant argues that Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666 (1963) is indistinguishable from the case at bar. That case did not involve a series of crimes of a known pattern occurring in a well-defined area. The arrest was predicated on evidence that there had been a robbery, that one of the robbers was a Negro wearing a trench coat, that a Negro man had fled from a taxi,. and that Gatlin, a Negro man, was observed on foot a mile and a half from the scene of the robbery wearing a trench coat. The court found that this was not sufficient to constitute probable cause.