247 F.Supp. 324 (1965)
UNITED STATES of America, Plaintiff,
v.
Walter McKETHAN, Defendant.
Crim. No. 419-65.
United States District Court District of Columbia.
November 3, 1965.
*325 Joseph A. Lowther, Asst. U. S. Atty., Washington, D. C., for plaintiff.
Jerome Shuman, Washington, D. C., for defendant.
YOUNGDAHL, District Judge.
The defendant has moved under Federal Rule of Criminal Procedure 41(e) to suppress certain evidence  1,352 milligrams of heroin and 9,620 milligrams of marihuana  which he alleges was illegally seized from his person.
At about 8:30 a. m. on February 2, 1965, Detective Bush of the narcotics squad and six other police officers proceeded to 1924 8th Street, N. W., Washington, D. C., to execute a warrant to search those premises. Two officers went to the rear of the building and remained outside it. The others entered the building after announcing their authority and purpose; the validity of the manner in which this entry took place is not attacked in the motion.
Upon entering the building, Detective Bush saw two men seated at a table in the dining room and another man, the defendant, sleeping in a chair in the corner of the room. Detective Bush approached the defendant, woke him, told him that he was a police officer and had a warrant to search the premises for narcotics, and asked him his name, which the defendant gave. He then "told him to stay there  to sit in the chair"  while the search was performed.
Two of the officers went upstairs and shortly called to Detective Bush to join them. He left Detective Fogle in the room with the three men and went upstairs. The defendant asked Detective Fogle whether he was under arrest and was told that he was not, since the warrant authorized a search, not an arrest. The defendant asked whether he might go into the kitchen to get a drink of water, and Detective Fogle replied that in the light of what he had told him, he could see no objection to his going into the kitchen.
When the defendant went into the kitchen he looked out the back door and apparently noticed the two officers who had gone to the rear of the building. He then closed the door, went to the sink, and turned on the water. A short time later Detective Bush returned to the first floor and went into the kitchen where he found the defendant standing near the sink with the water running. By the defendant's foot Detective Bush noticed a gelatin capsule which bore traces of a powder which, on the basis of his experience in the detection of violations of the narcotics laws, he concluded *326 was heroin. On the basis of this judgment he informed the defendant that he was under arrest for violation of the Harrison Narcotics Act and conducted the search of his person, the fruits of which are sought to be suppressed on this motion.
The defendant's contention that the evidence seized from his person must be suppressed is based on three alternative arguments, any one of which would be sufficient to justify suppression. He contends first that the search warrant was invalid and therefore the evidence involved here must be suppressed as fruit of the illegal search. Next he contends that even assuming the police were validly on the premises, there was never a time when Detective Bush had enough information to constitute probable cause for arrest and therefore the warrantless search of his person cannot be sustained as being incident to a lawful arrest. Finally he contends that, even if there might have been probable cause to arrest him in the kitchen, the arrest actually took place when he was told to stay in his chair after being awakened by Detective Bush and that at this time there certainly was no probable cause; since later events cannot be used to justify the arrest, all evidence seized is inadmissible.
The Court is unconvinced by the defendant's first argument. There was probable cause for the issuance of the search warrant. The reliability of the informant had been verified by the timeworn procedure of searching him, finding him to be without money or drugs, supplying him with money, watching him enter the premises and leave it, and finally searching him to determine that the money had been spent and drugs obtained. In Irby v. United States, 114 U.S.App.D.C. 246, 314 F.2d 251 (1963), a case which approved the issuance of a search warrant even though this careful verification had not taken place, Judge Wright, in his dissent, conceded that the process of verification used here was a valid one. Id. at 251, 314 F.2d at 256.
The Court also finds the defendant's second argument lacking in merit. An arrest without a warrant is justified in the District of Columbia if the arresting officer has probable cause to believe that a felony has been committed and probable cause to believe that the arrestee has committed the felony. Wrightson v. United States, 95 U.S.App. D.C. 390, 222 F.2d 556 (1955). Whether probable cause exists depends upon the facts of the particular case. In this case, the officers were on the premises under a warrant to search for narcotics and the defendant was found in the kitchen with water running and an empty capsule bearing powder traces lying at his feet. These circumstances suggested very strongly that the defendant was disposing of illegal drugs and therefore was violating and had violated the narcotics laws. Moreover, the arresting officer was an experienced member of the narcotics squad who had, among other things, performed field tests. Probable cause for arrest existed when this arresting officer knew all these facts. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751 (1958).
The defendant's final contention is that the arrest took place before Detective Bush knew all these facts  that it took place when the defendant was instructed to stay in his chair during the search. At this time the defendant was not standing before a sink with the water running, nor was a capsule lying at his feet. Instead, he was merely on the premises.
That the officers had a search warrant would not, in and of itself, constitute probable cause to arrest and search any person found on the premises. Cf. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Therefore, to find that the defendant was arrested when Detective Bush first entered the house might appear to be the crucial step in finding that the evidence subsequently seized from him must be *327 suppressed. However, under circumstances where probable cause to arrest is lacking, finding that an arrest has taken place is really less a step in the process of determining whether the fruits of police conduct must be suppressed than it is the conclusion of the process. This is so because the test of the Fourth Amendment  as well as the test courts may use in the creation of working rules restricting police conduct beyond the demands of the Amendment  is one of reasonableness. Because police conduct which is reasonable under some circumstances may be unreasonable under others, to brand as arrests all unreasonably restrictive police conduct performed when probable cause to arrest is lacking is to demand that the word arrest become a flexible concept, incapable of being simply defined.
The law in the District of Columbia demonstrates this difficulty of definition clearly. In Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961), the Court of Appeals for this circuit implicitly rejected the traditional definition of arrest  that it "is the taking of a person into custody in order that he may be forthcoming to answer for the commission of an offense." ALI Code of Criminal Procedure § 18 (1931). Instead, it held that an arrest occurs whenever a person "understands that he is in the power of the one arresting, and submits in consequence." Id. at 398, 298 F.2d at 312. Taken literally, this formulation of the test for determining when an arrest has taken place would seem to prohibit the police from ever detaining a person unless full probable cause for arrest could be shown. A simple amendment to the Kelley formulation might permit detention when criminal conduct is not involved, for example, in cases of traffic regulation. But even in the area of criminal conduct courts have in the past allowed detention of persons in vehicles and on foot when there was good reason for the detention, despite the lack of probable cause for arrest. See United States v. Bonanno, 180 F.Supp. 71 (S.D.N.Y.1960) (roadblock). In the District of Columbia, several cases justify questioning of suspects under circumstances where probable cause is lacking. Ellis v. United States, 105 U.S. App.D.C. 86, 264 F.2d 372, cert. denied 359 U.S. 998, 79 S.Ct. 1129, 3 L.Ed.2d 986 (1959); Green v. United States, 104 U.S.App.D.C. 23, 259 F.2d 180 (1958), cert. denied 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578 (1959); Franklin v. United States, 204 A.2d 341 (D.C.App. 1964); Fisher v. United States, 183 A.2d 553 (D.C.Mun.App.1962); Brooks v. United States, 159 A.2d 876 (D.C.Mun. App.1960). Yet it is obvious that when a police officer questions a person about his conduct, the person who answers the questions has sensed the power of the officer to detain him during the interrogation period and has submitted thereto. This Court must therefore determine not whether the police conduct in this case constituted an arrest according to the literal terms of some of our decisions, but rather whether it was reasonable conduct under the circumstances and in the light of what past decisions have held to be reasonable.
The government would like to sustain the detention as being reasonable because under the circumstances of this case the officers reasonably feared that the premises which they had been commanded to search might be disturbed were the defendant's liberty to "roam around" not restricted. The defendant would argue that the circumstances of this case did not justify any detention at the time the officers first entered the house. In the alternative, he would contend that assuming, arguendo, some detention was justified, the detention here imposed was nevertheless unreasonable in the light of alternatives open to the officers. Finally he would argue that, although the police may have been detaining him for a limited purpose, their conduct unjustly led him to believe that he had been arrested and would eventually be searched. This belief, he would contend, prompted his activities in the kitchen which justified his arrest, *328 and therefore the arrest and search were invalid.
The broad issue raised by the government's asserted justification for the detention of the defendant is whether officers executing a search warrant may restrict the movement of persons found on the premises so as to preserve the premises for the search. I believe they may. In narcotics cases the danger of secreting contraband is great, and some limitation of movement may often be justified.
In this case the officers could reasonably have feared interference in their search from the defendant. If he had attempted to prevent them from searching, they would of course have been justified in stopping him. Moreover, the officers did not have to wait to see whether there would be interference. The testimony revealed that there were at least three people downstairs and others upstairs in the premises they were searching. To wait for actual interference would be to run the risk that someone might do undetected damage.
The officers might have asked the defendant and the others seated in the dining room  who were also detained with the defendant  to leave the building during the search. But this also raises problems. Because the Fourth Amendment is a safeguard of personal liberty, it might well be regarded as a more severe infringement of that liberty for people rightfully in a place to be ordered to leave it than for them to be ordered to remain where they are within it. Moreover, in this case the warrant authorized a search not only of the building but of the yard and shed nearby. The informant, upon whose information the warrant was originally issued, had told Detective Bush that his vendor had gone out to the yard to get the narcotics which he sold him. To allow the defendant and the other men in the room with him to leave the house would have been to run the risk of some interference with the search of the yard and shed.
It may have been better had the police asked the defendant to leave the house. Or it may have been better still to have given the defendant a choice as to whether he would stay in his chair or walk from the building. But the fact that there may have been something better to do does not make what the police here did unreasonable. The alternatives were certainly not so clearly superior that we must condemn the course they in fact chose. We ask good conduct from the police; we do not demand perfection.
The Court is not persuaded by any argument that the manner in which the defendant was initially detained caused him to fear that a search of his person might take place and therefore induced him to perform the additional acts which justified his later arrest. Although Detective Bush testified that he would have prevented the defendant from leaving the premises  something which would not have been justified if the rationale for the detention were the need to prevent interference with the search inside the building  this cannot be determinative of the issue. Had Detective Bush acted in this manner, this Court would have been faced with a different case. Other testimony that the defendant was the only person searched and that the detention of the other two men lasted only fifteen or twenty minutes  just long enough to complete the search of the premises  suggests that the officers did not intend to make a full arrest. This conflicting testimony bearing on the intent of the police is largely beside the point in any case, since the test to be applied in judging the defendant's present argument is not what Detective Bush  or any other officer  thought, but what the defendant thought. Moreover, the test must be not what the defendant himself, as a possessor of drugs at the time of his detention, thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes. Detective Bush did not say that the defendant was under arrest, and Detective Fogle expressly said that he had not been arrested. A reasonable man, interpreting these words and the acts *329 accompanying them, would have considered his detention to be merely for the purpose of assuring that a proper search of the premises would be possible. If the defendant feared a search, it was his feeling of guilt which prompted his fears, not the conduct of the police. Had the defendant seen the police coming to the house, then gone to the kitchen, turned on the water, and let a capsule fall, and had he been apprehended there after a valid entry by the police, the arrest would have been proper. His arrest in this case, under analogous circumstances, should be and therefore is sustained.
Motion to suppress denied.