**Clarence RAY, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6027.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1971.

Decided March 6, 1972.

William A. Borders, Jr., Washington, D. C., for appellant.

James A. Adams, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at

the time the brief was filed, John A. Terry and David C. Woll, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, GALLAGHER and PAIR, Associate Judges.

PAIR, Associate Judge:

Appellant was convicted on two counts of an indictment charging violations of the lottery laws.[1] On appeal he claims error in the denial of his pre-trial motion and, at trial, his renewed motion to suppress evidence seized during the execution of a search warrant. The principal contention is that the affidavit in support of the warrant was deficient in three respects—(1) it contained information obtained in violation of appellant's fourth amendment right to privacy, (2) it was issued on stale information, and (3) the averments were insufficient to establish probable cause. For the reasons to be presently stated, we affirm.

The affidavit was presented to a magistrate[2] by Officer Clark (the affiant) on February 11, 1971. Some seven pages in length, the affidavit described 17 places, buildings and automobiles it was desired to search, including the premises in question, the "2nd (second) floor front bedroom" (hereinafter referred to as "the Room") at 3520–13th Street, N.W. Insofar as it related to appellant, the affidavit disclosed that on January 7, 1971, information was received at the Office of the Fourth District Vice Squad that the Room was being used in a bookmaking operation. On previous occasions, the informant had furnished information which resulted in the conviction of "more than ten persons for violations of the lottery laws of the District of Columbia." Five of those persons were named and their addresses given. The specific information furnished by the informant was that, on several occasions while visiting a friend who rented a room adjoining the Room at 3520–13th Street, N.W., he heard a man's "voice reading number digits over the telephone" and heard also the sound of an adding machine.

On January 8, 1971, Officer Winkey and the informant were admitted to the adjoining room by its occupant, the friend of the informant. The officer heard the ring of a telephone, the voice of a man who answered and the same voice "calling off number bets," and he heard also the sound of what he believed to be an adding machine. When a man left the Room and premises, Officer Winkey followed and observed the tag number of his automobile, and traffic records disclosed that the automobile was registered to appellant. Upon inquiry at the Criminal Records Division, it was disclosed that charges of operating a lottery[3] and possession of numbers' slips[4] were pending against appellant.

On January 19, 1971, Officer Winkey was informed by the same informant that three days prior thereto he had visited his friend at 3520–13th Street, N.W., and had overheard the reading of numbers' bets and the sound of an adding machine. Accompanied by the informant, Officer Winkey then returned to the adjoining room and the officer himself again overheard a male voice calling off numbers' bets and the sound of an adding machine.[5]

During the course of the investigation, Officer Clark observed appellant on January 18th and 21st make stops of about five minutes each at premises which he had under surveillance for violations of the lottery laws.

On February 2, 1971, appellant was observed by Officer Winkey to visit four of the locations which were the subjects of

---

1. D.C.Code 1967, §§ 22–1502 and 22–1505 (b).

2. A judge of the Superior Court of the District of Columbia.

3. D.C.Code 1967, § 22–1501.

4. D.C.Code 1967, § 22–1502.

5. No electronic or other listening device was employed by either the informant or the police officer.

the search warrant and to emerge a short time thereafter either carrying a brown paper bag or with a large bulge under his coat. Appellant then returned to the Room. During this period telephone calls were made to each of the premises visited by appellant and numbers' information was obtained.

Observations similar to those made on February 2nd were made on February 4th and 5th and, on each occasion, appellant went to the Room and spent most of the afternoon there before returning home.

The search warrant was issued on February 11th and executed on February 12th. Seized upon execution of the warrant was a duffle bag belonging to appellant which contained numbers' slips and run down tapes showing activity of $1,875.66. Appellant's fingerprints and his palm prints were found on the lottery slips which, by his motion, it was sought to suppress.

Appellant contends first that the affidavit in support of the search warrant was based, at least in part, upon information obtained during invasions of his fourth amendment right of privacy. More specifically, what appellant seems to claim is that he had a constitutionally protected right to immunity from the listening ear of the police officer as he (appellant) operated, in the Room, an adding machine and engaged in conversations relative to lottery operations.

It is well settled now that the right of privacy is conditioned upon a reasonable expectation that what is done or said will not be seen or heard, "[f]or the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). *See also* Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), where the Court quoted with approval from the dissenting opinion of Mr.

Justice Brennan in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), which reads:

> The risk of being overheard by an eavesdropper or betrayed by an informer . . . is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak. [385 U.S. at 303, 87 S.Ct. at 414.]

Accordingly, the facts and circumstances surrounding any interception of oral communications are crucial in this area of fourth amendment considerations.

The question presented therefore is whether, under the circumstances then obtaining, appellant had a reasonable expectation that his conversations and the sound of the adding machine would not be overheard.

In United States v. Llanes, 398 F.2d 880 (2d Cir. 1968), cert. denied, 393 U.S. 1032, 89 S.Ct. 647, 21 L.Ed.2d 576 (1969), police officers, suspecting that the defendant was involved in narcotic traffic, followed him into an apartment building and observed him enter an apartment. One officer positioned himself in the hallway near the door of the apartment and overheard conversations pertaining to narcotic transactions. Another officer peered into a partially opened bathroom window and observed that a white powder was being placed in glassine envelopes. A warrantless arrest, search and seizure and conviction for violations of 21 U.S.C. §§ 173, 174 followed. Rejecting, among others, the contention that the conversations and activity were constitutionally protected because carried on in the privacy of the apartment, the court, in affirming the judgment of conviction, said "conversations carried on in a tone of voice quite audible to a person standing outside the home are conversations knowingly exposed to the public." [398 F.2d at 884.]

To the same effect was Ponce v. Craven, 409 F.2d 621 (9th Cir. 1969), cert. denied,

397 U.S. 1012, 90 S.Ct. 1241, 25 L.Ed.2d 424 (1970). There police officers overheard conversations of the occupant of a motel room and observed, through a partially opened window, activity within the room indicating involvement in narcotic traffic. Holding that there was no intrusion upon any reasonable expectation of privacy, the court said at 624:

[T]he very nature of motel residency distinguishes the scope of that protection from that possessed by a person in his own house. As the court stated in Marullo v. United States, 328 F.2d 361, 363 (5 Cir. 1964):

"A private home is quite different from a place of business or from a motel cabin. A home owner or tenant has the exclusive enjoyment· of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards, and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of public or shared property in motel surroundings that is entirely lacking in the enjoyment of one's home."

So it was in the case now on appeal. While appellant, as the occupant of the Room, was entitled to protection against any unreasonable intrusion upon his right of privacy, he had no control over the adjoining room, the areas outside the Room or access to the building. Under the circumstances, appellant could have no justifiable expectation of privacy in his conduct of lottery activity. Certainly, if he had been concerned that he might be overheard by a person in the adjoining room, he would have taken necessary precautions.

Notwithstanding, appellant would have us base our disposition on the holding in United States v. Case, 435 F.2d 766 (7th Cir. 1970), upon which he so strongly relies. In that case, federal officers obtained entry to a semi-private hallway by use of a key obtained from the landlord and listened to conversations carried on in a print shop, which gave them reason to believe that persons therein were engaged in the manufacture of counterfeit money. Because it appeared that persons in the print shop had taken precautions to insure privacy in their operations, the court held that there was an unconstitutional invasion of the defendant's right to privacy. Significantly enough, the divided court distinguished United States v. Llanes, *supra*, saying:

*Llanes*, however, is based upon the finding that the hallway was a public place and that the defendants could hardly expect conversations audible to someone in a public place to be regarded as private. On the contrary, the district judge in this case found that the hallway " * * * was not such a public area as to entitle the Court to consider it a nonprotected area" and we concur. . . . [435 F.2d at 768.]

■ Here, it is immaterial whether the hallway in the rooming house be considered a public or semi-private area, since the conversations were overheard by the officer while he was in the adjoining room over which appellant had no control. We hold, therefore, that there was no unreasonable intrusion upon privacy when the officer, while in the adjoining room, at the invitation of the person in control thereof, heard conversations and sounds all of which gave him reason to believe that gambling activity was being carried on in the Room.

■ Appellant contends next that the affidavit was deficient within the purview of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We disagree. The underlying facts upon which the informant based his belief that the person within the Room was engaged in illegal activity were set forth with particularity in the affidavit. Set forth also and in more than

adequate detail were facts upon which the informant's credibility was to be judged; specifically that the informant had in the past furnished information of lottery activity resulting in the conviction of ten persons, five of whom were named in the affidavit.

Put another way, the affidavit set forth (1) the factual basis for the informant's belief that criminal activity was being conducted in the Room,[6] (2) the basis upon which the affiant and his fellow officers judged the credibility of the informant,[7] (3) the record of appellant's prior involvement in the conduct of a lottery,[8] and (4) the personal observations by Officer Winkey, corroborative of the informant's report, which were consistent with the modus operandi of the suspected criminal activity.[9]

In short, the entire factual basis upon which the affiant formed his belief that criminal activity was afoot in the Room was set forth in affirmative allegations indicating personal knowledge respecting such matters, and the magistrate, by interpreting the averments of the affidavit in "a commonsense and realistic fashion"[10] arrived at the conclusion that there was probable cause for the issuance of a search warrant.

■ Appellant contends also that because he was not observed to enter the Room after January 19, 1971, the affidavit, issued as it was February 11, 1971, was based upon stale information. The plain fact is, however, as disclosed by the affidavit, that appellant was observed to enter the rooming house on February 2nd, 4th and 5th and to remain there for considerable periods of time. These observations, coupled with information respecting appellant's activity in the Room previously ob-

tained—first, by the informant and then by the police officer—constituted a sufficient basis for the belief that lottery operations were continuing at the Room. United States v. Harris, *supra* note 8; Irby v. United States, 114 U.S.App.D.C. 246, 314 F.2d 251, cert. denied, 374 U.S. 842, 83 S. Ct. 1900, 10 L.Ed.2d 1064 (1963).

Finding no error, the judgment of conviction is

Affirmed.

---

6. First test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

7. Second test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964).

8. *See* United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

9. *See* United States v. Bell, 126 F.Supp. 612, 615 (D.C.1955), aff'd 240 F.2d 37 (1956).

10. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ; Rutledge v. United States, D.C. App., 283 A.2d 213 (1971).