**UNITED STATES of America, Plaintiff,**

v.

**Peter TOWNSEND, II, Defendant.**

**Crim. No. 4–81890.**

United States District Court, E. D. Michigan, S. D.

April 11, 1975.

⚷3.7

William J. Richards, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Frank D. Eaman, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANT'S MOTION TO SUPPRESS

PHILIP PRATT, District Court.

Defendant, Peter Townsend II, has been charged in an indictment with three counts in violation of the United States Code. Count I alleges that defendant knowingly made false statements in connection with purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) and § 924(a); Counts II and III charge him with illegal possession of a firearm, in violation of 18 U.S.C.App. § 1202(a)(1). Defendant seeks suppression of guns seized pursuant to two search warrants, executed on October 24, 1973 and January 22, 1974. The evidence obtained from each warrant forms the basis of Counts II and III respectively.

The October 24 warrant authorizes seizure of "stolen firearms, app. ten (10), which are stored in the basement of the above location,[1] and in bedrooms, and any and all other stolen items, contraband." The affidavit states:

"Confidential informant IN596, an established reliable informant, advised the affiant that on October 16, 1973 at 7:30 p. m., that he was inside the above location, and witnessed that the above weapons [2] were inside the loca-

1. Listed in the warrant as 29080 Richard, Westland.

2. Listed in the warrant as "app. ten (10)", stolen firearms.

tion, and also witnessed the sale of stolen weapons to a 'Pete Townsend', who resides at the above location.

"Confidential informant IN596 further advised the affiant that he had on occasion personally delivered, or sold, stolen items at the above location."

Defendant challenges the warrant on the ground that the affidavit fails to satisfy the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963), fails to describe the items specifically and with particularity, and presents stale facts.

The January 22 warrant, which authorizes search for "any illegally possessed firearms," sets forth the following facts:

"The affiant is a member of the Wayne County Metropolitan Narcotic Bureau located at 3100 Henry Ruff Road, Westland, Michigan.

The affiant is working in conjunction with Informant M–3554 who the affiant states is a reliable informant who has provided narcotic information to affiant on two separate occasions which the affiant has cooperated with separate investigations. The informant has also been responsible for the arrest of two persons and the confiscation of a quantity of heroin, cocaine and four firearms.

On Monday, January 21, 1974, M–3554 went to 29080 Richard Street, City of Westland, the above premises was occupied by a negro male known to M–3554 as Peter Townsend, II, D.O.B. 12/20/43.

While on the premises M–3554 states that the subject Peter Townsend, II, was in possession of a .45 caliber Commander rifle, resembling in the appearance of that of a machine gun. M–3554 states that the subject Peter Townsend, II, uses the above weapon for self-protection while being in the illicit business of selling narcotics from the above residence.

The subject Peter Townsend, II has been convicted of a felony in the State of Michigan and therefore the possession of the above mentioned firearm is in violation of Title 18 of the U. S. Code, Section 1202, Paragraph A–1, which states that no person convicted of a felony may possess, have or buy any firearm."

Defendant contests the warrant, claiming that it is the impermissible fruit of the first; exceeds the authority of state magistrate; fails to meet the *Aguilar* requirements; fails to aver interference with interstate commerce and conviction of a felony; and was executed in contravention of the "knock and announce" requirement.

In addition, defendant seeks to suppress evidence pertaining to Count I; to wit, Form 4473, for purchase of a commando rifle, as the illegal fruit of the two warrants.

Finally, defendant seeks an evidentiary hearing on certain issues and asks for dismissal of the indictment.

*The October 24, 1973, Search Warrant.*

a). *Probable cause to believe "10 weapons" stolen.*

Defendant attacks the sufficiency of the affidavit in that it does not disclose facts from which a magistrate could conclude that the "app. 10 weapons" listed were stolen.

█ A search warrant must be supported by "probable cause," that is:

" 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1948).

█ In cases such as the instant one, in which a determination of probable cause must be made on the basis of hearsay statements not within the per-

sonal knowledge of the affiant, circumstances underlying the conclusion that criminal activity is in progress must be provided. (Aguilar v. Texas, *supra*). Thus, in the instant case, the affidavit must contain proximate facts indicating that the weapons present on the premises were, in fact, stolen.

 It is important to bear certain principles in mind in making that determination. The purpose of the "underlying facts" requirement is to insure that the reviewing magistrate is able to make an independent determination of probable cause and does not simply rubber-stamp conclusions of the affiant (*Aguilar, supra*). Thus, the pertinent inquiry is whether the magistrate has sufficient facts from which to draw the conclusion. The quantum of facts necessary need not make out a prima facie showing, but must establish more than mere suspicion. (Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637). Furthermore, less persuasive evidence is required to sustain search with a warrant than without a warrant (*Aguilar, supra*, at 111, 84 S.Ct. 1509). And, in marginal situations, warrants are upheld in order to encourage resort to orderly legal processes. (Jones v. U. S., 362 U.S. 257, 270–1, 80 S.Ct. 725, 4 L.Ed.2d 697).

 A magistrate, in assessing probable cause, may draw inferences from the facts (Johnson v. U. S., 333 U. S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436) based on personal experience. (See Irby v. U. S., 114 U.S.App.D.C. 246, 314 F.2d 251, 253 (1963), cert. den. 374 U.S. 842, 83 S.Ct. 1900, 10 L.Ed.2d 1064). The affidavit:

" * * * must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. * * * Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." (U. S. v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1964)).

The magistrate deals not in certainties, or even near certainties, but in probabilities. "These are not technical, they are the factual and practical considerations of everyday life in which prudent men, not legal technicians, act." (*Brinegar, supra*, 338 U.S. at 175, 69 S.Ct. at 1310). A statement "detailing the manner in which the information was gathered," that is, an indication of how the source received his information, satisfies the *Aguilar* requirement (*Spinelli, supra*, 393 U.S. at 416, 89 S.Ct. at 589). In the alternative, a detailed account of the situation suffices. (*Id.*)

 Application of the foregoing principles points to the conclusion that the magistrate had probable cause to believe the guns were stolen. The magistrate was justified in inferring, on the probabilities, in light of common sense, that the weapons observed were stolen.

The informant's personal observation, at a specified time and place, of weapons and sale of weapons, is sufficient, in the appropriate circumstances to furnish probable cause. Thus, in U. S. v. Shepstead, 433 F.2d 368 (9th Cir. 1970), the affiant's report that the informant had been inside the premises, where he had seen drugs, and the process of manufacture, provided ample justification for issuing the warrant. The facts of that affidavit parallel the instant one rather closely: here, the informant indicated that he had been inside, seen weapons and the sale of weapons. That eyewitness account is precisely the type of underlying fact approved of in *Spinelli, supra*, 393 U.S. at 416, 89 S.Ct. 584. (See also U. S. v. Warden of Attica, 381 F.2d 209 (2d Cir. 1971), in which the court opined in striking down a warrant, that *personal observation* of narcotics in a named address would have sufficed).

However, the fact that the informant in the instant case did report those circumstances is not, in itself, sufficient. The references to the weapons as "stolen" is purely conclusory, and the sale of weapons observed appears to refer to weapons other than the ten sought by the warrant. Furthermore, weapons,

unlike narcotics, are not illegal per se, and the inference of illegality is not permissible.

The affidavit must also provide a basis for believing the weapons were stolen. The fact that the informant had personally delivered and sold stolen items at the address gives rise to that belief.

 It is clear that prior illicit dealings on the premises is a factor in establishing probable cause. In Jones v. U. S., *supra*, the court looked to the fact that the affidavit recited that the informant had purchased narcotics there on many occasions.[3] In addition, information of a like nature has been accepted by other courts. In U. S. v. Buonomo, 441 F.2d 992 (7th Cir. 1971), cert. den. 404 U.S. 845, 92 S.Ct. 146, 30 L. Ed.2d 81 an affidavit which recited that the informant was in defendant's home, had seen counterfeit motor vehicle titles, and had been offered some for sale was held sufficient. There the informant was on the scene, saw items not per se illegal, described them in a conclusory manner, and reported that he had the opportunity to buy some. The proffered sale in *Buonomo* and the observation of the purchasers here are critical.[4]

Admittedly, the prior transaction is not thoroughly convincing. The informant's personal knowledge extends only to stolen "items," not necessarily weapons. In addition, it is removed in time from the observation in question. The statement is somewhat conclusionary in saying that the items were "stolen." That conclusion, however, is buttressed by the personal involvement of the informant with the stolen items, the repeated sales, the number of weapons and the damag-

ing nature of the admission by the informant. Furthermore, the fact that the informant's prior dealings are not necessarily, in a legal sense, proof of the instant offense is not determinative. (Draper v. U. S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958). The sole criterion is whether, from a common sense vantage point, those earlier experiences create probable cause to believe the instant weapons were stolen. The weaknesses inherent in the affidavit do not defeat that judgment of the probabilities.

b). *Reliability of confidential informant.*

 *Aguilar, supra,* further requires that the affidavit provide a basis for crediting the hearsay of an informant. Although there is no set formula for doing so, it is clear that the simple statement that there is "an established reliable informant" does not suffice. (*Spinelli, supra,* 393 U.S. at 416, 89 S. Ct. 584).

 However, several other factors in the affidavit meet the test. In particular, the affiant reports facts within the personal knowledge of the informant, conveys a particular address and states that, "Confidential informant IN596 further advised the affiant that he had on occasion personally delivered, or sold, stolen items at the above location." Those facts, in combination, tend to establish the informant's credibility.

 U. S. v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 733 (1971), is the key authority for the proposition that a declaration against penal interest, especially if supported by other indicia,

---

3. There were additional facts as well: that defendant was involved in trafficking, that he kept a "ready" supply under a pillow or in the dresser, and that other sources corroborated the information. Yet the court remarked, "Thus we may assume that Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics * * *. Had that been all, it might not

have been enough; but Didone swore to a basis for accepting the informant's story." (362 U.S. at 271, 80 S.Ct. at 736). Thus, the court implies that observation and a transaction fulfills the first prong of *Aguilar*, and the warrant stands if the second prong is also present.

4. The time lapse in the instant case will be dealt with infra.

establishes reliability. In that case, the affidavit averred, inter alia, that Harris had a reputation as a trafficker, a constable had uncovered a stash, that an informant "who fears for their life and property" and who was "prudent," had personal knowledge of the operation, and had personally purchased illegal whiskey on the premises. In Part I of the opinion, Justices Black, Blackmun and Stewart joined with Chief Justice Burger in finding that the declaration against interest, coupled with the personal observations of the informant, the corroboration, and allegation that defendant was a known trafficker, credited the hearsay. In Part II, three of those Justices, Burger, Black and Blackmun, felt that the allegations were sufficient even without the declaration against interest. (Part II). Four Justices, including the core three who concurred in Parts I and II, and Mr. Justice White, joined in Part III, to conclude that the declaration itself sufficed. Thus, a plurality of the Court agreed to sustain a declaration against interest; a majority approved of a declaration in combination with other evidences of reliability.[5] Furthermore, it appears that the additional factors need not be sufficient in themselves. Thus, while Mr. Justice Stewart did not think that the other facts were sufficient, he did agree that the totality provided probable cause.[6] The question before this Court, then, is whether the instant affidavit contains a declaration against interest which, either alone or in combination, makes the hearsay reliable.

The affidavit does contain an admission of criminal activity by the informant. As such, it falls within the observation in *Harris, supra,* that:

"Admissions of crime like admissions against proprietary interests, carry their own indicia of credibility * * *." (403 U.S. at 583, 91 S.Ct. at 2082).[7]

The next question, then, is whether there are sufficient additional indicia of reliability to bring the affidavit within the purview of the majority in *Harris.* Although the affidavit by no means, presents a strong showing of reliability (compare to *Armour, supra*), the Court concludes that it is sufficient. The presence of the informant at the scene of the crime (U. S. v. Evans, 447 F.2d 129 (8th Cir. 1971), specification of date, time and location (*Id. Armour, supra*), the personal knowledge of several illegal sales (*Armour, supra; Harris, supra; Jones, supra*), and the fact that affiant swears to the informant's "reliability" (*Harris, supra*), supply the necessary facts to establish reliability.

c). *Failure of affidavit to describe property with requisite particularity.*

▇▇▇▇▇▇▇ The standard for testing an affidavit to a search warrant is whether it provides probable cause to believe an offense is being committed. (Brinegar v. U. S., *supra*). It must, in effect, create a basis for believing that certain illicit items are on the premises. In addition, the warrant based on the affidavit must, under the language of the

---

5. The majority would be composed of Justices Black, Blackmun, White, Stewart, and the Chief Justice. Since Mr. Justice White accepted a declaration against interest itself, he would also assent to the combination.

6. See also Armour v. Salisbury, 492 F.2d 1032 (6th Cir. 1974).

7. This Court has two reservations, however. The admission is incomplete in the sense that it fails to mention a date or time. However, it does contain an admission *against interest,* which would, though unspecific, appear to suffice. Secondly, it is un-

clear, from the face of the affidavit, whether the informant is a police officer, who has no expectation of punishment. The Court would find it difficult to find his statement "against penal interest." However, it concludes that a magistrate may draw upon his own experience in concluding that an informant in such a situation is not a police officer. (See U. S. v. Sharfman, 448 F.2d 1352 (2d Cir. 1971), cert. den. 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789). In *Armour, supra,* the fact that an informant was not clearly a cooperative individual *on the face of the affidavit* did not give the Sixth Circuit reason to pause.

Fourth Amendment, particularly describe the place and things involved. (See Marion v. U. S., 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927)). However, as long as the affidavit provides probable cause, there is no requirement that it engage in a specific description. It need only foster the belief that items are present. Therefore, the search should not be invalidated on that basis. (See Lowrey v. U. S., 161 F.2d 30 (5th Cir. 1947), cert. den. 331 U.S. 849, 67 S. Ct. 1737, 91 L.Ed. 1858, reh. den. 332 U. S. 787, 68 S.Ct. 36, 92 L.Ed. 369).

### d). *Staleness.*

Defendant's next argument is that the facts of the affidavit are too old to supply probable cause. Specifically, he asserts that the lapse of eight days, from October 16, 1973, when the informant was present, to October 24, 1973, the date of execution, is a fatal defect.[8]

 It is well-settled that probable cause for issuance of a warrant must exist at the time of issuance (Sgro v. U. S., 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). Thus, if the facts underlying the warrant are too remote in time from the execution, the evidence seized must be suppressed. However, lapse of time per se is not controlling (Schoeneman v. U. S., 115 U.S.App.D.C. 110, 317 F.2d 173 (1963)). In fact, delays of eight days and longer have been upheld. (See U. S. v. Mustone, 469 F.2d 970 (1st Cir. 1970), cases collected in Annotation, 39 ALR 811, 847 as supplemented, A.L.R. 1418 and 162 A.L.R. 1406).[9] Rather,

"the question of the staleness of probable cause depends more on the nature of the unlawful activity alleged in the affidavit than the dates and times specified therein." (U. S. v. Harris, 482 F.2d 1115 (3rd Cir. 1973).

In particular,

"where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." (U. S. v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972).

Furthermore, it is permissible to inquire, from the facts, whether the weapons would probably be on the premises. (Bastida v. Henderson, 487 F.2d 860 (5th Cir. 1973). The affidavit at bar does aver facts pointing to a course of conduct. The informant related that he had participated "on occasion;" and that he witnessed transactions on October 16, 1973. Furthermore, all of the transactions referred to appear to be "incoming;" he documents instances of sale of weapons *to* Townsend. Thus, the suggestion is of the accumulation of an arms cache, which is not likely to disappear.

Nevertheless, there are two troublesome aspects in deciding the question of staleness. The first is whether there was probable cause to believe the "app. 10 firearms" listed in the warrant would be on the premises eight days after observation. In view of the implication that sales were being made to Mr. Townsend, the magistrate was justified in concluding they were present. In addition, the ongoing nature of the activity indicates that some quantity of stolen guns was on the premises. In cases of this type, the magistrate need not be able to conclude that the precise property observed is on the premises, but only that property of that type is present. Were the requirement otherwise, proba-

---

8. Defendant argues that October 16 is not the date the informant was on the premises, but the date he informed affiant of his activities. However, the affidavit says, "on October 16, 1973 * * * that he was inside the above location * * *." Therefore, it appears that October 16 is the date of observation.

9. In fact, F.R.Cr.P. 41(c) allows ten days in which to execute a warrant.

ble cause in cases involving narcotics and liquor, in which the contraband may be readily consumed or destroyed, would be nearly impossible to establish. (See e. g., U. S. v. Johnson, *supra;* U. S. v. Harris, *supra*).

Secondly, the statement concerning prior dealings occurred at some point in the undefined past. There is no date and no indication of temporal proximity. Therefore, it must be presumed stale (U. S. v. Boyd, 422 F.2d 791 (6th Cir. 1970)). The question then becomes whether that defect is fatal to the warrant.

The answer depends, in part, on the purpose of the staleness inquiry. The Supreme Court has explained:

"* * * it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a *finding of probable cause* at that time * * *. It is in light of the requirement that *probable cause* must properly appear when the warrant issues that we must read the (statutory) provision * * *." *(Sgro, supra,* at 211, 53 S.Ct. at 140; see U. S. v. Harris, *supra,* to the same effect). (Emphasis added).

If, as the quotation suggests, the timing of the facts is important to establish probable cause that a crime is being committed, the instant warrant is infirm, for the facts necessary to determine whether the weapons were stolen, namely, prior sales,[10] would be ancient.

However, courts have defined the meaning of the language more narrowly. Thus, in Durham v. U. S., 403 F.2d 190 (9th Cir. 1968), after quoting the passage from *Sgro,* the court elaborated by citing the Manual for United States Commissioners 24 (1948):

"The facts must show that the *property to be seized was known to be at the place to be searched* so recently as to

justify the belief that the property is still there at the time of the issuance of the warrant". (Emphasis added). (At.194). (*Schoeneman, supra,* at 177, in accord).[11]

Thus, it appears that the measure of staleness is not whether recent facts support probable cause to believe a crime is committed, but whether probable cause to believe the items sought are on the premises is sufficiently fresh. Since the facts outlining the presence of weapons on the premises are not stale, the affidavit passes muster under that test.[12]

However, even if the standard is full probable cause, this affidavit is not stale. When an affidavit reflects a series of events, time span is not determinative. (See U. S. v. Harris, *supra;* U. S. v. Johnson, *supra*). In effect, then, if old facts are historically associated with more recent ones, the importance of their age diminishes. Thus, in the case at bar, the fact that the early encounters set the pattern for and are followed by subsequent similar ones vitiates the staleness which may inhere in them.

e). *Specificity of Warrant.*

 The Fourth Amendment dictates that:

"No warrant shall issue (unless) particularly describing the * * * thing to be seized."

Particularity of description fulfills a fundamental function of a search warrant:

"The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhored by the colonists * * *. The warrant accomplishes the second objective by requiring a 'particular description' of the things to be seized." (Coolidge v. New

---

10. Discussion, *supra,* pages 6–7.

11. See also *Bastida, supra.*

12. Although the Court is willing to apply the more lenient test, it deems the necessity for doing so a sign of the inherent weakness of the affidavit.

Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1970).

The warrant in issue commands the seizure of:

> "Stolen firearms, app. ten (10), which are stored in the basement of the above location, and in bedrooms, and any and all other stolen items, contraband."

The Court concludes, with due regard to the deference accorded warrants as well as the contraband nature of the property,[13] that the warrant does not satisfy the particularity requirement of the Fourth Amendment.

■ In the first place, the addendum "any and all other stolen items, contraband" is impermissibly vague. Admittedly, F.R.Cr.P. 41(b) allows seizure of:

> " * * * (2) contraband, the fruits of crime, or things otherwise criminally possessed, * * *."

However, that authorization represents a generic classification of property subject to seizure. It is not, and constitutionally cannot, be construed as a blanket invitation to issue warrants for unparticularized contraband. Such a reading would effectively emasculate the vital requirement of particularity. The Rule contemplates that specific items of contraband be enumerated.[14] Thus, the concluding catch-all phrase is defective.

That deficiency, standing alone, is insufficient to infect the warrant fatally. (See Quigg v. Estelle, 492 F.2d 343 (9th Cir. 1974). However, the language, "stolen firearms, app. ten (10), which are stored in the basement of the above location and in the bedrooms," also poses a problem of significant proportions.

■ Superficially, the warrant appears to be directed to a defined quantity of firearms, further qualified by location. As such, it would, in all probability, withstand attack. But the description is deceptive in several important respects. When read in conjunction with the affidavit, its particularity is substantially reduced.[15] Although the warrant refers to "firearms," the supporting affidavit more broadly alludes to "weapons" and "items." And, although the warrant indicates that the weapons are in the basement and bedrooms, the affidavit amorphously speaks of the "above premises." Thus, specificity based on the underlying facts is quite precarious.[16] "Weapons" and "items" are by no means limited to firearms, and a search for such property acquires a degree of generality which this Court is hesitant to condone. In addition, acceptance of the conclusion that the weapons were in the basement and bedrooms would require retreat into a realm of speculation which this Court finds distasteful.

Furthermore, the description "10 firearms" cannot be upheld as permissibly

---

13. See Stanford v. Texas, 379 U.S. 476, 486, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1964) wherein the Court remarked: "We need not decide in the present case whether the description of the things seized would have been too generalized to pass constitutional muster, had the things been weapons, narcotics or cases of whiskey." See also U. S. v. DePugh, 452 F.2d 915, 920 (10th Cir. 1971) cert. den. 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805, reh. den. 409 U.S. 898, 93 S.Ct. 101, 34 L.Ed.2d 157.

14. Thus, for instance, when officers seize contraband without a warrant, they first see the items in context giving rise to the conclusion that they are contraband. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967). Similarly, officers exe-

cuting a warrant who come upon contraband first must reasonably be able to consider it as such. See Seymour v. U. S., 369 F.2d 825 (10th Cir. 1966), cert. den. 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239.

15. Thus, although an overly general warrant may be saved by reference to the accompanying affidavit, (See, e. g., Moore v. U. S., 149 U.S.App.D.C. 150, 461 F.2d 1236, 1240 (1972), resort to the instant affidavit simply highlights the defects of the warrant.

16. The Court is aware of its prior determination (at page 11) that the affidavit need not be particular, as long as the warrant meets the standard. However, the affidavit must provide sufficient basis from which a description can be drawn.

generic on the theory that exact description is a "virtual impossibility." (See James v. U. S., 416 F.2d 467, 473 (5th Cir. 1969), cert. den. 397 U.S. 907, 90 S. Ct. 902, 25 L.Ed.2d 87; Spinelli v. U. S., *supra,* rev'd. other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Firearms may be easily characterized by color, length, type and other defining attributes. Therefore, further description in the instant case is far from a "virtual impossibility," and the generic description in combination with the other defects in particularity, constitutes a violation of defendant's Fourth Amendment guarantee.

 In reaching its conclusion, the Court is mindful that:

"The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." (Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L. Ed.2d 908 (1965).

"The Fourth Amendment thus gives concrete expression to a right of the people which is basic to a free society." (Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1966)

Therefore, the Constitution forbids "unreasonable searches and seizures." (Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962). The question of "reasonableness," however, is to be determined in the light of the "total atmosphere of the case." (Go-Bart Importing Co. v. U. S., 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); U. S. v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653 (1950); U. S. v. Williams, 351 F.2d 475 (6th Cir. 1965), cert. den. 383 U.S. 917, 86 S.Ct. 910, 15 L.Ed.2d 671). Thus, the fatal defect of particularity should not be viewed in a vacuum. Accordingly, the Court's decision to suppress the evidence on that basis reflects its keen awareness of the multiple prob-

lems inherent in this warrant. This Court cannot, in good conscience, discount the cumulative impact of the highly troubling, barely permissible, aspects of probable cause, reliability and staleness as factors in its ultimate determination.

Therefore, the search warrant of October 24, 1973, must be suppressed.

## II. *The January 22, 1974, Warrant.*

a). *State Warrant issued on federal probable cause.*

Defendant contends that the second warrant must fail as a state warrant explicitly directed to a federal offense. According to stipulation between the parties, the instant warrant was sworn to and obtained solely by a state officer acting in his capacity as such, from the 29th District Court in Wayne County, Michigan. It was executed solely by state officers, without federal participation. The only federal input was a confirmation by the Bureau of Alcohol, Firearms and Tobacco, upon request by state authorities, that were defendant a convicted felon in possession of a firearm, he would be in violation of a federal statute. The final paragraph of the affidavit reflects that information. It reads:

"The subject Peter Townsend, II has been convicted of a felony in the State of Michigan and therefore the possession of the above mentioned firearm is a violation of Title 18 of the U.S. Code, Section 1202, Paragraph A–1, * * *."

After careful consideration of relevant precedent, this Court has concluded that it is necessary to suppress the evidence obtained pursuant to the second warrant.

 It is well-settled[17] that federal constitutional law governs judicial scrutiny of federal searches (Elkins v. U. S., 364 U.S. 206, 80 S.Ct. 1437, 4 L.

17. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1971) definitively applied federal constitutional requirements to state searches.

Ed.2d 1669 (1960)), even when the searches are executed under state warrants and in cooperation with state officers. (Byars v. U. S., 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927); Lustig v. U. S., 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1948)). The participation of federal agents some time before the search concludes renders the search "federal," and subject to federal strictures. (*Id.*).

That basic principle has been extended to federal statutory guidelines. Thus, in Benanti v. U. S., 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957), the Court suppressed the fruits of a state wiretap which violated 47 U.S.C. § 605, of the Federal Communications Act.

 Similarly, failure to adhere to federal rules of procedure, particularly Rule 41, has proved fatal for searches. In Navarro v. U. S., 400 F.2d 315 (5th Cir. 1968), the Court suppressed evidence seized in the joint state-federal execution of a state search warrant premised on state probable cause, on the ground that the warrant failed to comply with the Rule 41 requirement that a warrant be obtained from a state court of record.[18] It concluded, by reference to *Byars* and *Lustig,* that participation of federal officers in the search qualified it as federal, and mandated application of Rule 41. The *Navarro* thesis was further defined by the Fifth Circuit in U. S. v. Sellers, 483 F.2d 37 (5th Cir. 1973), reh. den. 485 F.2d 688. In that opinion the court refused to require compliance with a Rule 41 showing of federal probable cause in case of a state warrant, jointly executed, on state probable cause. Although it found sufficient basis for deeming the search "federal," it distinguished *Navarro:*

"The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained * * * if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.

*Navarro I* established that the 'court of record' requirement of Rule 41 was a substantive standard by which the conduct of federal searches should be measured rather than any mere procedural standard." (At 43).

Thus, Rule 41 criteria are applicable to a state-issued, jointly executed warrant based on state probable cause only to the extent that they represent substantive policy aimed at preserving the integrity of the federal courts or federal officers.[19] (See also U. S. v. Perez, 375 F.Supp. 332 (W.D.Texas 1974).

Furthermore, it has been indicated that state warrants, issued on federal probable cause, executed jointly should be subject to the full effect of Rule 41. Thus, the *Sellers* court, in elaborating its rationale, said:

" * * * We note that there is no suggestion that the state participation in the search was not a bona fide effort to secure evidence of a violation of state law * * * ." (At 42).

"While Rule 41 sets out the procedure to be followed in issuing a warrant

---

18. Rule 41 was amended to omit that requirement. However, it was reinstated on July 1, 1974. The District Court in the instant case, is, however, a court of record (MCLA § 600.7101(1), M.S.A. § 27A.-7101(1)). Therefore, that requirement is satisfied. See also U. S. v. Hanson, 469 F. 2d 1375 (5th Cir. 1972).

19. Understandably, then, state warrants executed only by state officers on state probable cause, which result in evidence for a federal prosecution are not to be guided by

Rule 41. (See, e. g., U. S. v. Coronna, 420 F.2d 1091 (5th Cir. 1970). But cf. U. S. v. Bowling, 351 F.2d 236 (6th Cir. 1965), cert. den. 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663, reh. den. 383 U.S. 973, 86 S.Ct. 1269, 16 L.Ed.2d 313, which suggests attention to the federal rules even in those circumstances. See also *Benanti, supra.* Of course, federal Constitutional standards judge the admissibility of evidence seized by state officers under state probable cause, for use in federal prosecution. See Elkins v. U. S., *supra,* and cases following it.

for a violation of federal law, it obviously should not be contemplated that the federal rule would purport to regulate \* \* \* search warrants predicated on violations of state law." (At 43).

(See also U. S. v. Perez, *supra*). .

In addition, there is some precedent for requiring compliance with Rule 41 by federal officers, acting jointly with state officers, on a state warrant grounded in federal probable cause. (See U. S. v. Brougher, 19 F.R.D. 79 (W.D.Pa.1956); U. S. v. Elliott, 210 F.Supp. 357 (D. Mass.1962).

■ Application of the foregoing principles to the instant case prompts the conclusion that failure to adhere to the substantive requirements of Rule 41 is fatal to this warrant.

■ The affidavit at bar presents probable cause to believe only that a federal offense is in progress. It is specifically directed to a named federal statute, and confines itself to the elements of that offense.[20] Thus, the Court need not reach the issue of whether the existence of state probable cause relieves the necessity for application of Rule 41.[21]

Therefore, had the warrant been executed jointly by state and federal officers, Rule 41 would be totally operative. The case would fall within the area of federal probable cause suggested in *Sellers*. The warrant would have had to comply with Rule 41 in every respect.

However, since the execution was accomplished only by state officers, this Court must decide whether it is a "federal search" within the meaning of *Byars, supra*, and whether it has contravened substantive policies of Rule 41 (*Sellers*). Alternatively, the Court must decide whether the absence of joint participation removes it from the larger rationale suggested in *Sellers*.

■ In the first place, it appears that the instant search was "federal." The test of joint participation is not exclusive;[22] the dominant theme is whether "state law enforcement officers do cooperate for the benefit of the federal sovereign." (*Navarro, supra*, 319). The instant search clearly inured to that benefit. It was premised solely on federal probable cause, and resulted only in a federal prosecution. Furthermore, it relied upon advice from the Bureau of Alcohol, Firearms and Tobacco, concerning the federal violation. Thus, it presents an even more compelling instance of "federal benefit" than a search in which there is federal participation, but no initial indication of federal probable cause or promise of federal evidence. Furthermore, a warrant issued on federal probable cause is federal by virtue of the limitations of power embodied in Rule 41. That is, Rule 41 grants authority to federal and state magistrates to issue federal warrants. (*Sellers*, at 44). Rule 41, in turn, has been held to authorize warrants only on federal probable cause (U. S. v. Brouil-

20. There is no reason to believe defendant is engaging in illicit sales or transactions, or has otherwise violated Michigan law. Even the description of a ".45 caliber commander rifle, resembling in appearance a machine gun" does not suggest violation of M.C.L.A. § 750.224, M.S.A. § 28.421, since the gun, unless altered, is not automatic. Furthermore, the statement that "Peter Townsend uses the above weapon for self-protection while being in the illicit business of selling narcotics" is wholly conclusory and does not establish state probable cause. (*Aguilar; Spinelli, supra*).

21. At least some courts have felt that the combination of state and federal probable cause should not invoke the Federal Rules. See *Sellers, supra*, at 44; Smith v. U. S., 321 F.2d 427, 429 (9th Cir. 1963). But cf. U. S. v. Sanchez, 509 F.2d 886 (6th Cir. 1975).

22. It is interesting to note that *Byars* and *Lustig, supra*, both involved state warrants issued on federal probable cause. Yet the court looked to federal participation as the federal attribute. However, there is no indication that other factors may not signify federal involvement. Rather, when participation is apparent, there is no need to reach other indicia. *Benanti, supra*, suggests that use in a federal prosecution is an equally valid test.

lette, 478 F.2d 1171 (5th Cir. 1973)). Such authority is in addition to that of the state to issue warrants on state probable cause. (*Sellers*, at 43). Thus, a "federal warrant" is one premised on federal probable cause.

■■■ Since the instant case involves a "federal search," the next inquiry concerns the question whether it violated any Rule 41 policies designed to protect the integrity of the federal courts or to govern the conduct of federal officers.[23] Two Rule 41 strictures, which were not followed, represent such substantive considerations. F.R.Cr.P. 41(a) provides, insofar as pertinent:

> "A search warrant authorized by this rule may be issued by * * * a judge of a state * * * upon request of a federal law enforcement officer or any attorney for the government." [24]

In addition, Rule 41(c) requires, inter alia:

> "The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof * * *. It shall command the officer to search * * * for the property specified."

Thus, the rule clearly contemplates that in cases such as the one at bar, where there is federal probable cause *in the first instance*,[25] that there be federal participation and supervision of the undertaking. The standards are not "merely blueprints of procedure for issuance of federal warrants." (*Sellers*, at 44). Rather, they are designed to protect the integrity of the federal police power by insuring some measure of control in purely federal matters to federal officers. If state officers were permitted to institute federal warrants without involving federal officers, they would be able to conduct federal investigations themselves. The unpredictable and certainly enormous, potential for abuse inherent in such an arrangement is manifest. Therefore, the warrant must fail on that basis.

In addition, since the warrant is based on federal probable cause, it should be subject to all Rule 41 requirements, as suggested in *Sellers, supra*. The fact that *Sellers, Brougher* and *Elliott, supra*, involved joint execution of the warrant does not furnish a meaningful basis of distinction. Admittedly, when federal officers participate, there is a stronger reason for application of federal rules.[26] But the purpose of the federal rules is not simply to provide guidelines for the actions of federal officers. "They prescribe standards for law enforcement" in federal cases (Rea v. U. S., 350 U.S. 214, 217, 76 S.Ct. 292, 294, 100 L.Ed. 233 (1955)); they are "designed to protect the integrity of the federal courts." (*Sellers* at 43). Importantly, they are exclusive and mandatory and supersede state rules of procedure in the federal courts. (See U. S. v. Virginia Erection Corp., 335 F.2d 868 (4th Cir. 1964); U. S. v. DiRe, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), dealing with the arrest context). Thus, federal rules should apply with equal force in cases involving federal probable cause, whether or not a warrant is executed jointly.

■■■ To hold otherwise would be to create an anomalous situation in which cooperative searches premised on federal violations would be governed by Rule 41, but identical state searches would not be so encumbered. The result would be to

---

23. For an elaboration of that standard, see U. S. v. Sturgeon, 501 F.2d 1270 (8th Cir. 1974).

24. F.R.Cr.P. 41(h) defines "federal law enforcement officer."

25. This Court is not concerned with cases of dual or state probable cause which uncover federal evidence.

26. It is significant to note that in *Benanti, supra*, the court mandated adherence to § 605 of the Federal Communications Act even though the wiretaps were conducted via state warrant, solely by state officers, on state probable cause. Thus, joint participation is not a necessary prerequisite to implementation of federal procedure.

encourage state officers to pursue federal crimes without contacting federal authorities. In addition, such practice would contravene Rule 41, which requires request and direction by a federal officer. Finally, and most importantly, it would expand state power to issue warrants beyond permissible limits. A state court, of course, has power to issue search warrants based on violations of state law, but may issue search warrants based on violations of federal law only in compliance with the provision of Rule 41 (*Sellers*, 43). Federal probable cause is an "inherent limit of the authority granted by Rule 41 to * * * state magistrates to issue federal search warrants" (*Id.*, 44). Thus, a state judge may issue a warrant on federal probable cause only in accordance with Rule 41. To allow issuance under other circumstances would be to increase the state power beyond limits as now defined. Consequently, the instant warrant must fail, because it did not issue under Rule 41.

The foregoing analysis, in requiring adherence to Rule 41, in effect mandates federal participation in the execution of warrants issued solely on federal probable cause. Such a requirement is not objectionable as being unwieldy or detrimental to state-federal cooperation.[27] It merely enforces the dictates of Rule 41, and the limitations of power reflected therein. Furthermore, to the extent that it may discourage state officers from conducting a completely federal investigation without contacting federal authorities, it serves an important and legitimate interest of federalism.

Thus, the instant evidence must be suppressed on the ground that the search was not conducted within the parameters of Rule 41. The instant warrant is federal; and failure to follow Rule 41 threatens the integrity of the federal system. Furthermore, there is no meaningful basis for distinguishing this search from those to which courts have applied the Federal Rules. Therefore, defendant's Motion to Suppress is granted. Since the Court bases its conclusion on that ground, it is unnecessary to address defendant's remaining challenges to this warrant.

### III. *Fruit of the Poisonous Tree.*

Defendant seeks suppression of Form 4473, used in the purchase of a commando rifle, as the fruit of the two illegal search warrants. The stipulated facts establish that subsequent to the October 24 search, on January 8, 1974, Special Agent Macek of the Bureau of Alcohol, Tobacco and Firearms, received defendant's name, birthdate and the serial number of a seized commando rifle. Agent Macek then traced the serial number to the place of purchase, Irv's Shooters' Supply. In the intervening time, the weapon was returned to the defendant. It was seized a second time during the January 22, 1974 search. Agent Macek, after consultation with the firearms specialist, went to Irv's Shooters' Supply on March 21, 1974, where he obtained Form 4473, which forms the basis for Count I of the indictment.

In view of the Court's invalidation of both the October 24 and January 22 searches, it is apparent that,

" * * * granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality." (Wong Sun v. U. S., 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L. Ed.2d 441 (1962)).

Knowledge of the form is neither so far removed from the taint as to be purged, nor traceable to an independent source (*Id.*; Silverthorne Lumber Co. v. U. S., 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1919)). Accordingly, Form 4473 must be suppressed as illegal fruit of the search warrants.

---

27. *Sellers* suggests that the requirement of federal involvement in cases of state probable cause would be objectionable on those grounds (at 43–44). This case is completely distinguishable on that basis.

### IV. *Dismissal of Indictment.*

Defendant urges the Court to dismiss Counts I, II and III of the indictment on the ground that the grand jury was presented with illegally obtained evidence, or fruits thereof; and that the government's case relies heavily on that evidence. Neither reason provides a basis for dismissal of an indictment. (Costello v. U. S., 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955); Lawn v. U. S., 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); U. S. v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); U. S. v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).

It is so ordered.