**David BOWLING, a Minor, by Phyllis C. NADVORNIK, his Next Friend, Theresa N. Bowling, Phyllis C. Nadvornik, and Robert C. Nadvornik, Plaintiffs**

v.

**CITY OF WESTLAND, Chief of Police William L. Rechlin, Sergeant Hugh Carpenter, Sergeant Robbin Crosby, Officer Tommy Dean Vaughan and Officer Dale Moore, Jointly and Severally, Defendants.**

Civ. No. 82–72801.

United States District Court,
E.D. Michigan, S.D.

Jan. 17, 1985.

---

Marvin Skupski, Dearborn, Mich., for plaintiffs.

Owen Cummings, Livonia, Mich., for defendants.

## AMENDED MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COHN, District Judge.

This is a police misconduct case. The parties and the claims are described in the order of July 13, 1984.[1] The underlying facts are essentially uncontested and are described on pages 3 and 4 of the joint pretrial statement approved April 3, 1984.[2] Plaintiffs now move for partial summary judgment on their claim that the search of their home and the subsequent seizure of

1. The order reads in part:

This is a police misconduct case. Plaintiffs are David Bowling (son), Theresa N. Bowling (daughter), Phyllis C. Nadvornik (mother) and Robert C. Nadvornik (stepfather). Defendants are City of Westland police officers, Hugh Carpenter (Carpenter), Robbin Crosby (Crosby), Tommy Dean Vaughan (Vaughan), the City of Westland and the Chief of Police, William L. Rechlin (Rechlin). The case involves a search and seizure at the home of plaintiffs and the arrest and juvenile prosecution of the son. The claims are asserted under 42 U.S.C. § 1983 and state law.

Defendants have moved to dismiss or in the alternative for summary judgment. Several hearings have been held. This order resolves the motion.

The claims for negligence, invasion of privacy and intentional infliction of emotional distresses are DISMISSED. These claims are simply not described in the record with sufficient particularity.

The claims against Carpenter, Crosby and Vaughan are as follows:

| | Son | Daughter | Mother | Stepfather |
|---|---|---|---|---|
| 1. Illegal search and seizure (§ 1983) | X | X | X | X |
| 2. False arrest (state law) | X | | | |
| 3. Malicious prosecution and abuse of process (state law) | X | | | |

The claims by plaintiffs against the City of Westland and Rechlin are for failure to train and supervise police officers (§ 1983).

The claim for malicious prosecution and abuse of process is of doubtful validity since the record does not reflect involvement by Carpenter, Crosby or Vaughan and indicates that the juvenile proceedings were concluded on the merits.

2. Pages 3 and 4 read in part:

### B. Uncontested Facts:

1. Geraldine Aben of 1170 Henry Ruff, City of Westland, Michigan, complained to the Westland Police around 6:30, P.M., on July 31, 1981 of a breaking and entering.

2. Mrs. Aben reported stolen (1) Gruen watch with the initials "S.N." scratched on the back; (2) a Panasonic component stereo with two round speakers; (3) a GE casette player; (4) a Panasonic 8-track player AM–FM radio; (5) a watch with a silver band and a red digital face; (6) an AM–FM clock radio; and (7) an off-white blow dryer.

3. Defendants Vaughan and Moore interviewed a Mr. William Meade. Mr. Meade told them that George Smith told him that David Bowling was responsible for the breaking and entering.

4. Mr. Meade also stated to the officers that he purchased a watch with the initials "S.N." on the back from David Bowling for ten dollars ($10.00) at approximately 6:00, P.M., that evening. The watch is identified as having been taken in the B & E.

5. Mr. Meade also stated that he saw the items Mrs. Aben reported as stolen in David Bowling's residence that evening at around 6:00, P.M.

6. Defendants Crosby and Carpenter were called and prepared an application for search warrant and a search warrant based on the statements of Mr. Meade.

7. The search warrant authorized the search for those items listed in paragraph 2 above and "... any other property believed to be stolen."

8. Application for search warrant was submitted to Judge Callanan of City of Westland District Court and the search warrant as prepared by Officers Crosby and Carpenter was issued by Judge Callanan.

9. Defendants Vaughan and Moore placed David Bowling's residence under observation from approximately 7:30, P.M., until 10:00, P.M., that evening when Defendants Crosby and Carpenter arrived with the search warrant.

10. At approximately 10:00, P.M., the officers entered David Bowling's residence in execution of the warrant. The residence is also home for the other Plaintiffs. At the time Defendants entered the residence pursuant to the search warrant the only persons present in the residence were Plaintiff Theresa Bowling and Richard Witkowski.

11. As a result of the search Defendants seized (1) one Panasonic casette player; (2) one Audiotronics casette player; and (3) one Remington electric chain saw.

12. David Bowling upon his arrest was taken to the City of Westland Police Station and then the same evening taken to the Wayne County Juvenile Home.

their property on July 31, 1982 was done under an invalid search warrant. Plaintiffs specifically say that 1) there was no affidavit supporting the search warrant and 2) assuming that the search warrant was itself an affidavit, it did not show probable cause. Plaintiffs further say that defendants' seizure of their property was not made in good faith.

In response, defendants argue that plaintiffs' claim as to the absence of an affidavit and lack of probable cause are precluded because they are beyond the scope of the joint pretrial statement. Defendants also argue that the warrant does show probable cause and that the seizure was made in good faith.

Plaintiffs, for the reasons which follow, are correct with regard to the invalidity of the search warrant.

## I.

Fed.R.Civ.P. 16(e) provides that the pretrial order (read joint pretrial statement) "shall control the subsequent course of the action unless modified by a subsequent order". Defendants argue that in moving for summary judgment on the grounds that there was no affidavit and that the warrant was issued without probable cause, plaintiffs make claims beyond the scope of the joint pretrial statement. In the joint pretrial statement, plaintiffs state that their claim arises from the "individually named defendants improperly executing an invalid search warrant". Under the heading "Legal Issues" the statement goes on to list

"a. May William Meade by regarded as a reliable informant;

b. Was the search warrant used to search Plaintiffs' home invalid because it was an unconstitutional general warrant."

Although the precise issues raised here are not stated in the same words in the joint pretrial statement, certainly the lack of an affidavit and issuance of the warrant without probable cause are claims which go to the validity of the search warrant, an issue that *was* raised in the statement. The cases cited by defendants do not support their argument that the court should not consider these issues. These cases involve situations where a party is raising entire claims not mentioned in the pretrial order after verdicts had already been rendered. *See, e.g., McKinney v. Galvin*, 701 F.2d 584 (6th Cir.1983); *Union Planters National Bank v. Commercial Credit*, 651 F.2d 1174 (6th Cir.1981).

■ "Courts have held that the (pretrial) order should be construed liberally so that it covers any of the possible legal or factual theories that might be embraced by its language". 6 Wright & Miller, *Federal Practice and Procedure*, § 1527. Considering that the claims raised by the motion are generally stated in the joint pretrial statement, there is no reason to adopt defendants' rather technical reading.

## II.

As to plaintiffs' claim that the search warrant was invalid because it was not supported by an affidavit, defendants say that since the search warrant contained the signatures of both the issuing judge and the affiant, William Andrew Meade, the affidavit was contained within the warrant and there was no need for Meade to sign a separate statement under oath.

■ The Fourth Amendment provides in part:

"No warrants shall issue; but upon probable cause, supported by oath or affirmation."

13. Plaintiff Phyllis Nadvornik upon learning of the events described above telephoned the Westland City Police and talked to Defendant Carpenter. Phyllis Nadvornik was informed that her son David Bowling would not be released to her from the police station.

14. On August 7, 1981 after Mrs. Aben looked at the seized property and each item was checked against the reports of stolen property, the seized items were released to Plaintiff Phyllis Nadvornik.

*See* Mich.Stats.Ann. § 28.1259(1) [M.C.L.A. § 780.651]. In determining whether there is probable cause to issue a search warrant, the magistrate can consider only the information contained in the affidavit made before him. Mich.Stats.Ann. § 28.1259(3) [M.C.L.A. § 780.653]; *Aguilar v. Texas,* 378 U.S. 108, 112, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964); *People v. Coleman,* 100 Mich.App. 587, 300 N.W.2d 329 (1980). The purposes of the affidavit requirement have been described as a

> "guarantee that the finding of probable cause will be based only on material allegations which are true ... to ensure that the magistrate may judge for himself the persuasiveness of the precise facts relied on to show probable cause, and ... to provide a record upon which the reviewing court may properly determine the sufficiency of the facts presented to the magistrate to establish probable cause and whether these facts were given under oath."

Ringel, *Searches & Seizures, Arrests and Confessions,* §§ 5.4–5.4(a).

■■■ The Court has found no cases directly on point, *i.e.,* where the warrant is also claimed to serve as the affidavit. However, in view of the purposes underlying the requirement of the affidavit to satisfy minimum institutional requirements, it does not appear necessary to require a separate document, so long as the facts giving rise to probable cause are set out somewhere. In addition, the search warrant itself, in lieu of stating the grounds for probable cause, may instead incorporate by reference or have attached a copy of the affidavit. *See Massachusetts v. Sheppard,* —— U.S. ——, ——, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984); Mich. Stats.Ann. § 28.1259(4) [M.C.L.A. § 780.-654]; Ringel, *supra,* at § 5.4(c) ("[t]he fact that the information relied on to establish probable cause is not in the form of an affidavit will not always defeat the warrant, as long as the information is sworn to under the oath or affirmation requirement"). Affidavits, normally drafted in

haste by non-lawyers, are not held to rigid technical requirements "once exalted under common law pleadings". *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). Therefore, the issue is not whether the search warrant was supported by a piece of paper marked "affidavit" but rather, whether the facts presented in the search warrant are sufficient to establish probable cause.

### III.

Defendants argue that the affidavit contained in the warrant "overwhelmingly supports" a finding of probable cause. A careful reading of the search warrant suggests otherwise.[3] The search warrant opens by stating:

> "on this day William Andrew Meade, affiant, having subscribed and sworn to an affidavit for a Search Warrant, and I having under oath examined affiant, am satisfied that probable cause exists;"

The search warrant then commands the police to search a one story brick ranch house to seize:

> "one panasonic stereo component set with two brown walnut speakers
> one GE cassette player, black and chrome 10″ × 12″ × 4″
> one panasonic 8 track AM/FM radio
> one unknown brand watch, silver band, red digital face
> one white AM/FM radio (clock radio-alarm)
> one white hair dryer
> Any other property believed to be stolen."

This list is followed by the paragraph constituting the affidavit claimed by defendant to support the finding of probable cause. This portion reads:

> The following facts having been sworn to by affiant in support of the issuance of this Warrant: On 7–29–81, a breaking and entering at 1170 Henry Ruff, where the above listed items were taken along

---

**3.** A copy of the search warrant is attached as Appendix A.

with a Gruen Women's quartz digital watch with the initials of the Complt. (S.N.) engraved on same. On 7–30–81, Affiant was at 1171 Sharon (address listed in warrant) and observed several of the listed items along with the listed watch which he purchased for the purpose of returning to the Complt. to identify. Found inside of the purchased watch were the Complts. initials. Same was turned over to the Westland Police Dept. and entered in as evidence.

The search warrant concludes with the signature of William Andrew Meade and the words

. "Issued under my hand this 30th day of July 1981"

followed by the signature of the magistrate. Only by implication can it be said that Meade was actually sworn by the magistrate.

■ Probable cause has been defined as

"the facts and circumstances within their (the officer's) knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."

*United States v. Townsend*, 394 F.Supp. 736 (E.D.Mich.1975) (quoting *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948)). In addition, "the reasons that caused the officer to conclude that probable cause was present must be made known to the Magistrate". Ringel, *supra*, at § 4.1(c). This is essential so that the magistrate will serve as more than merely "a rubber stamp for the police". *United States v. Ventresca, supra* 380 U.S. at 109, 85 S.Ct. at 746 (1965). Although affidavits in support of a search warrant should be tested in a common sense and realistic fashion, *id.* at 108, 85 S.Ct. at 745,

[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure

that such an abdication of the Magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

*Illinois v. Gates, supra* 103 S.Ct. at 2332 (1983).

■ Viewed in the most realistic manner possible, the sworn statement, assuming it was sworn, on the basis of which this search warrant was issued could not have provided probable cause. It is certainly not clear how Meade could have sworn to the breaking and entering at 1170 Henry Ruff. It is also not clear from Meade's statement how he knew at the time that he was in plaintiff's home, that the watch and other "listed items" which he claims to have seen were the items allegedly stolen and not items previously belonging to plaintiff. Finally, it is not clear why Meade purchased this watch for identification and what previous relationship he had with the complainant "S.N." and with plaintiffs. The only facts the "affidavit" attests to is that Meade purchased a watch from plaintiffs and, drawing a permissible inference from the facts stated, that this watch had been stolen the day before. Although Meade claims to have seen the other "listed items" this fact is not specific enough, and the surrounding "facts and circumstances" are not clear enough, to support a finding of probable cause.

Defendants rely on *United States v. Townsend, supra,* to support the argument that Meade's affidavit was sufficient to show probable cause. Defendants' reliance is misplaced. There the court stated that an informant's personal observation of weapons and the sale of weapons was not, in itself, sufficient to establish probable cause for the issuance of a search warrant authorizing seizure of "stolen weapons". The court concluded, however, that probable cause was established because of "the personal involvement of the informant with the stolen items, the repeated sales, the number of weapons and the damaging nature of the admission by the informant". 394 F.Supp. at 742. Unlike the affiant in

*Townsend,* Meade made no statement as to his personal involvement with prior stolen items. He described no course of prior transactions that could establish probable cause to believe that the other items claimed to have been seen by him were stolen.

■ Defendants also say in their brief in opposition that "prior to his purchase, Mr. Meade had been informed by a third-party that Plaintiff, David Bowling, had broken into the Aben home and had stolen various items". Since this bit of information is not contained in the search warrant, it certainly cannot be considered in determining whether probable cause existed for issuance of the warrant. Mich.Stats.Ann. § 28.1259(3) [M.C.L.A. § 780.653]; *People v. Coleman, supra; see Illinois v. Gates, supra* 103 S.Ct. at 2332. Even if these facts had been contained in Meade's sworn statement, since it was given to the affiant by an unnamed source of unknown reliability it could be given very little weight, if any, by the magistrate in his determination of probable cause. There is just no basis for determining the informant's veracity, reliability or basis of knowledge. *See Illinois v. Gates, supra* at 2327–28 (1983) (Although these elements are not to be "rigidly exacted in every case", they are "all highly relevant in determining the value of [the informant's report]"); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

## IV.

Plaintiffs also claim that the search warrant is invalid because it does not particularly state the things to be seized. The Fourth Amendment requires that "no warrants shall issue ... without particularly describing the place to be searched and the person or things to be seized." Plaintiffs claim that the catchall phrase "and any other property believed to be stolen", turns the search warrant into an impermissible general warrant. "As to what is to be taken, nothing should be left to the discretion of the officer executing the warrant". *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

In *Townsend, supra,* the court held that a concluding, catch-all phrase is a deficiency which "standing alone, is insufficient to infect the warrant fatally." However, "[i]t may generally be said that less specificity will suffice when the police or government investigators have made the most through presentation possible to the magistrate concerning the particular crime under investigation". Ringel, *supra,* at § 5.6.

■ It is significant that in *Townsend,* although the court found that there might have been probable cause for the issuance of the warrant, and that the lack of specificity in the warrant was not fatal, the court ultimately concluded that the fruits of the search warrant had to be suppressed. The court stated that in view of the multiple problems inherent in the warrant, including the catch-all language and the problems regarding probable cause, the court could not in good conscience uphold the warrant. Likewise, in view of the fact that there was an insufficient showing made as to the probability that plaintiffs were in possession of stolen items and the catch-all phrase as well as the more technical problems surrounding the "affidavit", this Court concludes that the search and seizure involved here was in violation of the Fourth Amendment rights of plaintiffs.

As to the validity of the search and seizure, plaintiffs' motion for summary judgment is GRANTED.

## V.

Plaintiff also argues that in executing the search warrant, defendants Carpenter, Crosby and Vaughan did not act in good faith. It is uncontested that none of the items seized actually corresponded with the items listed on the face of the search warrant. However, defendants say that the items were seized in the reasonable belief that they were authorized by the search warrant.

A police officer has a complete defense to liability under § 1983 if he reasonably believed in good faith that his actions were constitutional. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The good faith inquiry used to determine the existence of this immunity is limited to "the objective reasonableness of an official's conduct". *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982);[4] c.f. *United States v. Leon*, — U.S. —, —, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984) (objective test used to establish good faith exception to the exclusionary rule). Specifically, the question presented is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization". *Leon, supra,* at — n. 23, 104 S.Ct. at 3421 n. 23.

*Harlow* eliminated the subjective component of § 1983 qualified immunity to facilitate the granting of summary judgment motions on insubstantial claims. The court noted that the issue of an official's subjective good faith has been considered a jury issue and that use of an objective test, "by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."

*Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2739.

However, this Court is unwilling on the record before it to decide that as a matter of law the search warrant was so deficient, and the circumstances surrounding its issuance " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' ". *Leon, supra,* — U.S. at —, 104 S.Ct. at 3422 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)). This is especially so since the conclusion that the search was invalid was based, not on any single blatant deficiency, but on a number of deficiencies any one of which, standing alone, may not have been sufficient to invalidate the search. The objective reasonableness of the reliance by defendant on the warrant and execution of the search presents a genuine issue of material fact which should not be disposed of on a motion for summary judgment. *See Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979).

On the issue of good faith, the motion for summary judgment is DENIED.

SO ORDERED.

## APPENDIX A

STATE OF MICHIGAN

COUNTY OF } SS

Wayne

## SEARCH WARRANT

TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY:

On this day **William Andrew Meade** affiant, having subscribed and sworn to an affidavit for a Search Warrant, and I having under oath examined affiant, am satisfied that probable cause exists;

THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I command that you search the following described place: **1171 Sharon in the City of Westland, that being a one story brick ranch, red brick front, white trim, facing west with a garage to the rear.**

and to seize, secure, tabulate and make return according to law the following property and things:

4. Although *Harlow*, a suit filed against federal officials, did not involve immunity under § 1983, the court stated that "it would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brough directly under the constitution against federal officials.' " *Harlow, supra,* at 818 n. 30, 102 S.Ct. at 2739 (quoting *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978)); *see Briggs v. Malley,* 748 F.2d 715 at 718 (1st Cir.1984).

one panasonic stereo component set with two brown walnut speakers
one GE cassette player,black and chrome 10"x 12" x 4"
one panasonic 8 track player AM/FM radio
one unknown brand watch,silver band,red digital face.
one white AM/FM radio (clock radio-alarm)
one white hair dryer
Any other property believed to be stolen.

The following facts having been sworn to by affiant in support of the issuance of this Warrant:     On 7-29-81,a Breaking And Entering at 1170 Henry Ruff,where the above listed items were taken along with a Gruen Womans Quartz digital watch with the initials of the Complt.(SN) engraved onsame. On 7-30-81,Affiant was at 1171 Sharon and observed several of the listed items along with the listed watch.which he purchased for the purpose of returning to the Complt to identify. Found in insideof the purchaed watch were the Complt.s intials.Same was turned over to the Westland Police Dept.and entered in as evidence.

*William Andrew Meade*

ISSUED UNDER MY HAND THIS 30 DAY OF July , 1981

JUDGE OF 18 District Court
Westland, Michigan

PROSECUTOR'S COPY OF SEARCH WARRANT